UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHICAGO TITLE INSURANCE
COMPANY, a foreign corporation,

    Plaintiff/Counterclaim Defendant,

vs.                                                 Case No. 3:06-CV-1082-J-12MCR

COMMONWEALTH FOREST
INVESTMENTS, INC., a foreign
corporation,

    Defendant/Counterclaim Plaintiff,
_____/

FOLEY & LARDNER, LLP, a foreign
limited liability partnership, f/k/a Foley
& Lardner, d/b/a Florida Title Agency,

    Additional Counterclaim Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Counterclaim Defendant Chicago Title Insurance Company's ("Chicago Title") Motion to Dismiss Count II of Defendant's Second Amended Counterclaim (Doc. 24), filed February 21, 2007, and Additional Counterclaim Defendant Foley & Lardner, LLP d/b/a Florida Title Agency's ("Florida Title Agency") Motion to Dismiss Count II of the Second Amended Counterclaim (Doc. 29) filed February 26, 2007.

Counterclaim Plaintiff Commonwealth Forest Investments, Inc. ("Commonwealth") filed responses in opposition to the motions to dismiss (Docs. 31 and 32). With leave of Court (Doc. 37), Counterclaim Defendants filed reply memoranda (Docs. 40 & 41) and Commonwealth filed responses to the reply memoranda (Docs. 42 & 43). The Court heard

1

oral argument on the motions on May 17, 2007. For the reasons set forth below, the Court will grant the motions to dismiss (Docs. 24 and 29) and will dismiss Count II of the Second Amended Counterclaim (Doc.22) against both Counterclaim Defendants.

## I. Motion to Dismiss Standard

For purposes of deciding the motions to dismiss, the Court must accept Commonwealth's well-pled allegations as true and view the facts in the light most favorable to Commonwealth. See, e.g., Hartford Fire Ins. Co. v. California, 509 U.S. 764, 770 (1993); Quality Foods De Centro Amer. v. Latin Amer. Agribusiness Dev. Corp., 711 F.2d 989, 994-95 (11th Cir. 1983). Chicago Title argues in its motion to dismiss that Commonwealth's negligence claim (Count II) is barred by the economic loss rule and that any relief Commonwealth may be entitled to is limited to its claim for breach of contract (Count I), that is, breach of the Title Insurance Policy ("Title Policy") at issue. Florida Title Agency (the authorized agent of Chicago Title) adopts Chicago Title's economic loss rule argument and also argues that the negligence claim against it must be dismissed because it did not owe a duty to Commonwealth that would support an independent cause of action for negligence against it because Commonwealth's relief, if any, lies against Chicago Title under the Title Policy.

## II. Factual Allegations and Issue Presented

In August 1996, Commonwealth agreed to purchase real property in St. Johns and Flagler Counties, Florida (the "Property"). Doc. 22, ¶7. Prior to closing, Chicago Title and Florida Title Agency issued to Commonwealth a Commitment for Title Insurance (the "Title Commitment"). Doc. 22, ¶¶8-9; Doc. 22-2. The Title Commitment obligated Chicago Title

to issue a Title Policy to Commonwealth for the Property under the terms set forth therein. Doc. 22-2. The Title Policy that ultimately was issued in accordance with the Title Commitment "insures Commonwealth against any loss or damage sustained or incurred by Commonwealth by reason of any encumbrance on the title." Doc. 22, ¶ 20; Doc. 22-2.

Commonwealth alleges that before issuing the Title Commitment, Chicago Title and Florida Title Agency had a duty to conduct or have conducted a reasonable search and examination of title to the Property and to advise Commonwealth of all recorded encumbrances, and that Commonwealth relied upon the Title Commitment to disclose the existence of all recorded encumbrances on the Property, in lieu of obtaining an abstract of title and title opinion. Doc. 22, ¶¶ 10, 11, and 14. Commonwealth also asserts that at the time it purchased the Property, the Florida Power and Light Company held a recorded easement over the Property that was not disclosed in the Title Commitment (the "Easement") or listed as an exclusion or covered by an exception in the Title Policy. Doc. 22, ¶¶29 and 32-33; Docs. 22-2 and 22-3. Commonwealth maintains that in conducting their search and examination of title to the Property before issuing the Title Commitment, Chicago Title and Florida Title Agency were negligent in failing to discover the Easement, negligently misrepresented the quality of title to the Property by failing to schedule the Easement, and as a result, Commonwealth sustained damages. (Doc. 22, ¶¶ 32-36, 38 & 50).

Chicago Title denied Commonwealth's Title Policy claim relating to the Easement and sued for a declaratory judgment. See Complaint, Doc. 2. Commonwealth counterclaimed for breach of the Title Policy (Count I) and for negligence (Count II). See Doc. 22. Chicago Title and Florida Title Agency moved to dismiss Count II of

Commonwealth's Second Amended Counterclaim, arguing the tort action for negligence is barred by the economic loss rule because the parties are in privity of contract and any relief that Commonwealth may be entitled to is available under the Title Policy and governed by its terms. In addition, Florida Title Agency seeks dismissal of the negligence claim against it on the basis that it owed no separate duty to Commonwealth that would give rise to a claim for negligence apart from the Title Policy. The motions to dismiss raise the issue of whether Commonwealth's remedy for the alleged failure to discover and disclose the Easement is limited to a cause of action against Chicago Title for breach of the Title Policy or whether it may maintain a cause of action against both Counterclaim Defendants for negligence. For the reasons set forth below, the Court finds that Commonwealth's remedy is limited to its claim for beach of the Title Policy, and as a result, its negligence claim must be dismissed.

### III. Analysis of Applicable Law

In deciding whether Commonwealth may maintain a cause of action for negligence against the Counterclaim Defendants, the Court must decide whether Florida Title Agency and Chicago Title may be sued for negligence in conjunction with the preparation and issuance of the Title Commitment which failed to disclose the Easement and whether the economic loss rule bars any such claim for negligence because Commonwealth's right to recovery is governed solely by the Title Policy. The Court will address each of these issues in turn and notes that the analysis of each issue overlaps to some extent.

## A. Florida Title Agency's Liability

Commonwealth argues that Florida Title Agency is liable to Commonwealth for its alleged negligence in failing to discover and disclose the Easement on the Property in the same way that an abstractor can be held liable in the absence of a contractual relationship, for "injury resulting from his wrongful or negligent errors in preparing an abstract of title and from defects or omissions in the abstract which he prepared and furnished" if the abstractor knows or should know of the intended use of the abstract by a third party. First Amer. Title Ins. Co. v. First Title Serv. Co., 457 So. 2d 467, 472-74 (Fla. 1984); accord Abstract Corp. v. Fernandez Co., 458 So. 2d 766 (Fla. 1984). Commonwealth's position is that the duty of an abstractor to conduct a reasonable search and examination of title and to disclose record encumbrances also applies to those issuing title commitments and policies, such as the Counterclaim Defendants in this case, citing Shada v. Title & Trust Co. of Fla., 457 So. 2d 553, 557 (Fla. 4th DCA 1984), and that such duty arises from public policy, as codified by Florida Statute. See Lawyer's Title Ins. Corp. v. D.S.C. of Newark Ents., Inc., 544 So. 2d 1070, 1072 (Fla. 4th DCA 1989); Fla. Stat. §§ 627.784 & 627.7845(1) (1996) ("A title insurer may not issue a title insurance binder, commitment, endorsement, title insurance policy, or guarantee of title until the title insurer has caused to be conducted a reasonable search and examination of the title and of such other information as may be necessary . . . .") Because Commonwealth has alleged a breach of this duty and damages flowing from the breach; it maintains that it has stated a cause of action for negligence as to both Florida Title Agency and Chicago Title. See Moransais v. Heathman, 744 So. 2d 973, 976 n.3 (Fla. 1999).

In this case, Commonwealth obtained a Title Commitment and Title Policy in lieu of an abstract of title and a title opinion. The Title Commitment issued by Florida Title Agency, as the agent of Chicago Title, commits Chicago Title to issue a Title Policy under the terms set forth therein. Doc. 22-2.

There is no dispute that Chicago Title did in fact honor the Title Commitment by issuing the Title Policy. The Title Policy insures Commonwealth for defects or encumbrances in the title to the Property as promised. In other words, under the terms both of the Title Commitment and Title Policy, Chicago Title agreed to pay Commonwealth for its resulting damages up to the Title Policy limits, and Commonwealth agreed to accept such limits on its potential damages, in the event that there were any encumbrances or defects in the title.

While some analogy to the abstractor liability cases may be appropriate, the entire relationship between Commonwealth, Chicago Title, and Florida Title Agency concerns the issuance of the Title Policy. Commonwealth determined that it would procure the Title Policy in lieu of an abstract of title and/or title opinion. The very nature of the title insurance transaction was that Commonwealth obtained protection for title defects, but agreed to limit its recovery for any title defect to the limits of the policy. Chicago Title, through its agent Florida Title Agency, agreed to issue the Title Policy and to pay up to the policy limits if any defect in the title was discovered. It is important to note that neither the Title Commitment nor the Title Policy purport to warrant that the title to the Property is free from title defects.

The Court is of the opinion that the alleged negligence in failing to discover encumbrances or any breach of duty to conduct a reasonable search and examination of title

and disclose encumbrances is a breach of the Title Policy and that recovery for damages from such breach are governed by the Title Policy. The public policy underlying the duty arises in the context of a relationship between the parties concerning a contract of title insurance. See Lawyers Title, 544 So. 2d at 1072. The Court in Lawyers Title found that because public policy imposed a duty, codified under Florida law, on the title company to make a thorough and competent search of record title, the title policy issuer could not escape liability under the title policy when a defect in the title not excepted from coverage caused a loss to the insured. Id. In other words, the Court found that any breach of the duty to make a thorough and competent search of record title amounted to a breach of the title policy.

There is no doubt that Florida law imposes on the title policy issuer a duty to discover and disclose encumbrances to title. However, the issue before the Court is whether in the context of a title commitment and title policy, an independent cause of action for breach of that duty (negligence) exists or whether the remedy for breach of that duty lies under the title policy.

For the reasons stated above, the Court finds that the negligence alleged in this case amounts to a breach of the title policy. Moreover, the Court cannot find that the Title Commitment, which simply obligated Chicago Title to issue the Title Policy in accordance with specified terms, gives rise to an independent cause of action for negligence against Chicago Title's agent, Florida Title Agency, under the circumstances of this case, which does not involve any alleged intentional conduct that might arguably fall outside the Title Policy.

Additionally, as discussed more fully below, the relationship between Commonwealth and Florida Title Agency is contractual, by virtue of the fact that Florida

7

Title Agency issued the Title Commitment. Just as the contractual relationship between Commonwealth and Chicago Title precludes Chicago Title's tort liability for claims arising out of the contractual relationship under the economic loss rule. Commonwealth's contractual relationship with Florida Title precludes imposing tort liability on Florida Title as well. Further, Florida Title was Chicago Title's agent, and, because Commonwealth's negligence action cannot proceed against Chicago Title it cannot proceed against its agent, Florida Title.

### B. Economic Loss Rule

Commonwealth maintains that under controlling Florida Supreme Court case law, the economic loss rules does not bar Commonwealth's claim for negligence against Chicago Title and Florida Title Agency. See, e.g., Indem. Ins. Co. of N. Am. v. Am. Aviation, 891 So. 2d 532, 542 (Fla. 2004); Moransais v. Heathman, 744 So. 2d 973, 982 (Fla. 1999). The Court concludes, however, that Commonwealth's negligence action is barred by the economic loss rule.

The economic loss rule bars tort actions "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d at 536. As noted above, Florida statutes require title insurers to search the official records prior to insuring title and prohibit the issuance of title policies without regard to the possible existence of adverse matters or defects of title. Fla. Stat. §§ 627.784 & 627.7845. The title search and list of encumbrances are integral parts of a title insurance policy because they shape the allocation of risk between the insurer and insured. The economic loss rule protects these contractual expectations.

8

including the important expectation that a title insurer's risk will be limited to the dollar amount shown on the face of the policy. see Fla. Stat. § 627.778(1)(a). For the reasons the Court discussed above, Commonwealth must not be permitted to circumvent the policy's allocation of risk and expose Chicago Title to potential liability in excess of the policy limits by alleging a tort based on the negligent search and disclosure of encumbrances. First Nat'l Bank v. Attorneys' Title Ins. Fund, Inc., 620 So. 2d 263, 263-64 (Fla. 4th DCA 1993) (affirming denial of tort recovery and citing AFM Corp. v. S. Bell Tel. & Tel. Co., 515 So. 2d 180 (Fla. 1987)); Ticor Title Ins. Co. v. Univ. Creek, Inc., 767 F. Supp. 1127, 1140 (M.D. Fla. 1991) (applying the economic loss rule to dismiss a negligence action against a title insurer). Commonwealth presumably knew its potential damages when it decided to purchase the Title Policy with its specified limit on recovery of damages for title defects. The Court is of the opinion that neither the alleged facts nor applicable law in this case support an independent cause of action for negligence against either Florida Title Agency or Chicago Title.

Commonwealth's negligence claim is also foreclosed by the unambiguous language of the policy precluding an independent tort action for negligence. Paragraph 15(b) of the policy states. "Any claim of loss or damage, *whether or not based on negligence*, and which arises out of the status of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy." (Emphasis added). Commonwealth's negligence action is a claim of loss or damage arising out of the status of the title. Thus, applying fundamental contractual principles, Commonwealth's action is restricted to the policy. See Moransais v. Heathman, 744 So. 2d at 981 (stating a preference for relying on

"fundamental contractual principles"); see also Chicago Title Ins. Co. v. Huntington Nat'l Bank, 719 N.E. 2d 955, 962 (Ohio 1999) (holding that provision in title policy restricting any claim of loss or damage, including negligence claims, to the policy precluded independent tort action for negligent failure to discover preexisting mortgage).

Commonwealth cites Shada v. Title & Trust Co., 457 So. 2d 553 (Fla. 4th DCA 1984), for support of its position concerning the economic loss rule. Shada is not controlling, however, because it was decided prior to the development of the economic loss rule in Florida and because there is no indication that the policy at issue in Shada contained a provision similar to paragraph 15(b) precluding independent tort actions. Moreover, Shada's reasoning, which is based in part on an analogy to title abstractor liability, is not consonant with the Florida Supreme Court's repeated refusal to recognize tort actions against title abstractors unless the abstractor knew or should have known that a third party would rely on the abstract. Erskine Fla. Prop., Inc. v. First Am. Title Ins. Co., 557 So. 2d 859, 860 (Fla. 1989) (liability of an abstractor to a third party must be based on a breach of an "express or implied contract"); Sickler v. Indian River Abstract & Guar. Co., 195 So. 195, 197-98 (Fla. 1940). In addition, as stated above, the relationship between the parties in the title commitment/title insurance context is not completely analogous to the situation between an abstractor and third parties. See Greenberg v. Stewart Title Guar. Co., 492 N.W. 2d 147 (Wisc. 1992)(declining to impose tort liability on title insurance companies as in Shada and citing other jurisdictions which have similarly refused to impose such liability).

Commonwealth's reliance on Crawford v. Safeco Title Ins. Co., 585 So. 2d 952 (Fla. 1st DCA 1991), is also misplaced. There is no indication that Crawford involved a similar

title insurance policy. Moreover, Crawford turned on the fraud exception to the economic loss rule, an exception Commonwealth has not alleged. Id. at 955 (distinguishing Erskine because the complaint sounded "in contract *and* in negligent misrepresentation in the nature of fraud" (emphasis added)).

The Court is also unpersuaded by Commonwealth's assertion that the professional malpractice exception to the economic loss rule applies. Moransais, 744 So. 2d at 983 (recognizing a professional malpractice exception). Neither title insurance agents nor title abstractors fall within Moransais' definition of "profession." Id. at 976 (defining "profession" as "any vocation requiring at a minium a four-year college degree before licensing is possible in Florida").

Further, the Court concludes that § 627.7845, Fla. Stat., does not provide for a statutory cause of action for deficient title search. Section 627.7845 is regulatory in nature. Had the Florida legislature intended to create a private cause of action under this statute, it would have done so expressly, as it did with other sections of the insurance code. See Fla. Stat. § 624.155. Moreover, exposing title insurance companies to liability in excess of the policy limits is contrary to the legislature's goal in § 627.778(1)(a) of furthering the stability and viability of the title insurance industry by requiring title insurance policies to state the dollar amount of risk assumed and limiting such risk to one-half of the insurer's surplus.

## IV. Conclusion

For the foregoing reasons, the Court will grant the motions to dismiss and dismiss Count II of the Second Amended Counterclaim with prejudice as to both of the Counterclaim Defendants.

**ORDERED AND ADJUDGED:**

1. That Counterclaim Defendant Chicago Title Insurance Company's Motion to Dismiss Count II of Defendant's Second Amended Counterclaim (Doc. 24) is granted;

2. That Additional Counterclaim Defendant Foley & Lardner, LLP d/b/a Florida Title Agency's Motion to Dismiss Count II of the Second Amended Counterclaim (Doc. 29) is granted;

3. That Count II of Commonwealth's Second Amended Counterclaim (Doc.22) is dismissed with prejudice as to both Counterclaim Defendants; and

4. That entry of final judgment for the Counterclaim Defendants on Count II of the Commonwealth's Second Amended Counterclaim is deferred pending final disposition of the case.

**DONE AND ORDERED** in Jacksonville, Florida, this 27TH day of June 2007.

_Howell W. Melton_
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Counsel of Record